**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2952-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

WAYNE E. BROUGHTON, a/k/a
WAYNE BROUGHTON and
SHARAY R. PALMER, a/k/a
SHARAY PALMER,

    Defendants-Respondents.

_____

Submitted October 29, 2025 – Decided July 7, 2026

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 21-08-0720.

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for appellant (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

Weinstock Levin, attorneys for respondent Sharay R. Palmer (Oded Weinstock, on the brief).

PER CURIAM

We consider the State's appeal from a series of interlocutory orders denying reconsideration of multiple rulings which excluded certain evidence from admission at trial. Prior to trial, the State moved to admit various recorded jail calls and other surveillance evidence. After an N.J.R.E. 104 testimonial hearing, the motion judge admitted some calls into evidence and excluded others. However, the judge issued no written order and placed only limited reasons on the record in support of the evidentiary rulings. The State sought reconsideration of the inadmissible calls. On reconsideration, a second motion judge reviewed the record and issued five orders between February and May 2025, admitting some and excluding other recordings. On appeal, the State argues that the motion judges committed error when they found some of the recorded jail calls inadmissible.

We affirm in part, vacate in part and remand for proceedings consistent with this opinion.

I.

A.

On May 24, 2020, at around 3:00 a.m., Vineland Police responded to a call about a gunshot victim on West Chestnut Avenue. Upon arrival, they found

A-2952-24

three occupants in a vehicle. One occupant, Travis Douglas, was pronounced dead at the hospital. A second, Marvel Trenard, was treated for gunshot wounds to his back and leg. A third, Robert Clark, was uninjured. According to Clark, all three were leaving a house party on West Chestnut Avenue, when Douglas "had words with [a] dark-skinned male [wearing a] white t-shirt outside of the house in the driveway." The male was later identified as co-defendant Sharay Palmer.

Detectives collected and reviewed surveillance video, which depicted Palmer at the party in a white shirt. He left the party before the victims, then additional surveillance video showed him exiting a Dodge Charger to enter his girlfriend Maquana Bartley's house. Surveillance also showed a green/teal minivan, later identified as being operated by co-defendant Wayne Broughton, in the area of the party. Clark stated that a "teal or blue color minivan pulled up next to [their] car on the drivers' side and started shooting." Trenard corroborated Clark's statement, stating that he saw the "teal van" shooting at them. He identified Palmer as the shooter.

After the shooting, the minivan was tracked via surveillance video to the Oakview Apartments in Millville, where Broughton was seen entering and exiting an apartment. On July 11, 2020, Palmer was arrested in California and

extradited to New Jersey. On August 14, 2020, Broughton was arrested in Millville.

B.

In August 2021, a Cumberland County grand jury indicted co-defendants Wayne Broughton and Sharay Palmer with first-degree murder, N.J.S.A. 2C:11-3(a)(1) to (2); first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1) to (2); first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1) to (2); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2). Broughton was indicted by the grand jury separately on a charge of fourth-degree tampering with or fabricating physical evidence, N.J.S.A. 2C:28-6(1).

The State obtained recordings of a jail visit and outgoing phone calls by Palmer and Broughton while they were in jail awaiting trial. In April 2022, the State filed Watson[1] and Driver[2] motions, seeking to admit certain items into evidence, including defendants' jail calls. The State proffered the recorded visit and the phone calls for admission. The relevant motion exhibits were S-1

---

[1] State v. Watson, 254 N.J. 558 (2023).

[2] State v. Driver, 38 N.J. 255 (1962).

through S-14 for Palmer, and SB-1 through SB-10 for Broughton. During the hearing, the motion judge severed the matter, ordering separate trials for each defendant.

For Palmer's jail calls, the motion judge found State's exhibits S-5, S-6, S-7, S-7A, S-8, S-9, S-10, S-11, and S-12, and S-13 inadmissible. State's exhibits S-7 through S-9 are not on appeal before us, but we recount the motion judges' findings for the sake of completeness. The first motion judge found: S-7 inadmissible due to being "read any number of ways," and not probative; S-7A was reserved until trial when the transcript would be before the court; and S-8 and S-9 were reserved until the transcript of S-7A was provided for context. The second motion judge, on reconsideration, excluded S-7 through S-9. The motion judge made limited findings to support its exclusion decisions.

On S-5, a recorded conversation between Palmer and Ryonna Maven, the motion judge considered the Rules of Evidence and stated, "S-5 doesn't go in because I can't figure how it goes in."

Concerning S-6, a recorded conversation between Palmer and his father, Radcliffe Palmer, the motion judge found the recorded conversation was "not an admission" by Palmer. The judge stated, "[a]ll right, I don't see how this comes in. Nothing in S-6 is admissible."

5

S-10 was a recorded in-person visitation between Palmer and Maquana Bartley. S-11 and S-12 were recorded jail calls between Palmer and Bartley. Referring specifically to S-10, the motion judge did not see how the call was "relevant to whether or not [Palmer] left Ms. Bartley's house, went and got picked up by Mr. Broughton, drove to a different location, killed a guy and then presumably went back to Ms. Bartley's house[.]"

At the request of the State, the judge then analyzed S-10 through S-12 together. The State sought to admit S-10 through S-12 pursuant to N.J.R.E. 803(b)(1), as each contained Palmer's own statements. The motion judge found all three recordings inadmissible in their entirety under N.J.R.E. 403, stating only that, "it would confuse the issues," and did not "add[] anything to the case."

Turning to Broughton's jail calls relevant to this appeal, the motion judge found SB-2 and part of SB-4 inadmissible. The judge made limited findings to support the exclusion of SB-2 and part of SB-4.

Concerning SB-2, a jail call from Broughton to Angel Cruz, the court found the statement inadmissible under Rule 403, stating, "you got to speculate to figure out what [Broughton's] talking about," further finding that "the prejudicial value outweighs the probative worth, because it could lead to misleading the jury and causing the jury to have to speculate."

A-2952-24

As to SB-4, a call between Broughton and an individual known to him as "Uncle Harold," the motion judge admitted a portion of the call, but excluded other portions of the call without placing reasons on the record to support the decision. Thereafter, the motion judge was assigned to another vicinage and never memorialized the rulings in an order.

The State sought reconsideration fourteen months after the motion judge's evidentiary rulings, in August 2024. A different judge heard the matter. The reconsideration judge found:

> So in looking at that, there's no question that when [the motion judge] was actually speaking about these particular rulings, he may not have used the magic phrase, "substantially outweighed" for each specific call, but that was discussed throughout the hearings on two days and my impression of what [the motion judge] did was although he may not have said it for each particular piece of evidence, that was fundamentally the – what he was basing his analysis on for each individual call. So even though he didn't walk through and say S-5 is not admitted because the prejudice substantially outweighs its probative value, that was presumed because he had used that rule and had applied it throughout the course of the two-day hearings.
>
> . . . .
>
> . . . . I don't find that [the motion judge] wasn't considering [Rule] 403 and doing the balancing that he needed to do, it was something that he applied across the board and he just did not find that those particular calls should be admissible.

A-2952-24

And I do think that it's not so much a palpably unreasonable decision, whether this [c]ourt would have done something different I can't tell you because I wasn't sitting there over the course of the two days, but after reviewing – going back and reviewing the State's submissions with regard to these calls and then reviewing [the motion judge's] transcripts in terms of how he got to each of those decisions, I don't find that he overlooked anything and I don't find that his decisions were palpably unreasonable to overcome the burden on a motion for reconsideration. Again, whether I would have agreed or not, at this point it's nobody's guess because I wasn't there on those two days, but I don't find, for purposes of a motion for reconsideration, that the State has shown that [the motion judge's] decisions were palpably unreasonable, so I'm going to deny the State's motion and those calls will remain inadmissible.

After memorializing the motion judge's rulings in a February 6, 2025 order, the reconsideration judge granted in part and denied in part the State's motions in a series of orders dated March 31, 2025, April 16, 2025, and May 16, 2025.

We granted leave to appeal. Before us, the State argues that the motion judge and the reconsideration judge abused their discretion in all the orders by improperly excluding S-5, S-6, S-10, S-11, S-12, SB-2 and SB-4, and denying reconsideration.

II.

8

"'Although the Rules Governing Criminal Practice do not include a rule for reconsideration,' the '[Supreme] Court has never questioned the appropriateness of interlocutory motions to reconsider in criminal matters.'" State v. Keogh, 481 N.J. Super. 67, 84 (App. Div. 2025) (internal citations omitted) (first quoting State v. Vanness, 474 N.J. Super. 609, 625-26 (App. Div. 2023); and then quoting State v. Timmendequas, 161 N.J. 515, 554 (1999)). Thus, "[o]rdinarily, absent a mistaken exercise of discretion, we will not disturb a trial court's order on a motion for reconsideration." Ibid.

We defer to a trial court's evidentiary rulings, absent an abuse of discretion. State v. Burney, 255 N.J. 1, 20 (2023). In other words, we ask if "a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Taylor, 261 N.J. 440, 449 (2025) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Under this standard, we "review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). We "will not substitute [our] judgment unless the evidentiary ruling is 'so wide of the mark' that it constitutes 'clear error in judgment.'" State v. Garcia, 245 N.J. 412, 430 (2021) (quoting Medina, 242 N.J. at 412). "A trial court's 'discretion is abused when relevant

9

evidence offered … and necessary for a fair trial is kept from the jury.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting State v. Cope, 224 N.J. 530, 544-55 (2016)).

However, "we owe no deference to a decision made without explanation or a decision made without considering the applicable factors." Matter of D.L.B., 468 N.J. Super. 397, 420 (App. Div. 2021).

III.

We consider the challenged exhibits.

i

Palmer's Exhibits

S-5, S-6, S-10, S-11, and S-12

S-5 was a recorded phone call between Palmer and Ryonna Maven, proffered by the State pursuant to Rule 803(b)(1). S-6 was a recorded phone call between Palmer and his father, Radcliffe, which the State proffered under Rule 803(c)(3). The motion judge excluded S-5 and S-6 because he was unable to determine how the evidence could be admitted. The judge did not cite to the

rules of evidence proffered by the State nor any principle of law to support his statement, which is inconsistent with <u>Rule</u> 1:7-4.[3]

S-10 through S-12 were a recorded jail visit and two jail calls between Palmer and his girlfriend Bartley. The State relied on Rule 803(b)(1) to introduce all three exhibits into evidence. The motion judge applied Rule 403 and simply stated that admission of the recorded statements would "confuse the issues."

Rule 403 states:

> Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of:
>
> (a) Undue prejudice, confusion of issues, or misleading the jury; or
>
> (b) Undue delay, waste of time, or needless presentation of cumulative evidence.

---

[3] The pertinent section of the rule states: "The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right, and also as required by <u>R.</u> 3:29. The court shall thereupon enter or direct the entry of the appropriate judgment." <u>R.</u> 1:7-4(a).

The motion judge made no findings balancing the probative value of Palmer's recorded calls against their prejudice to defendant. It was a mistaken exercise of discretion by the motion judge to exclude the calls as evidence at trial without such findings. See R. 1:7-4; see also Big Smoke LLC v. Twp. of W. Milford, 478 N.J. Super. 203, 227-28 (App. Div. 2024) ("It is incumbent on the trial court to state specific reasons when dismissing a complaint with prejudice. . . . A trial court's failure to clearly state all conclusions of fact and law that support a dismissal with prejudice 'constitutes a disservice to the litigants, the attorneys and the appellate court.'" (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980))).

The reconsideration judge relied upon the motion judge's insufficient factual findings to determine that the motion judge performed a proper Rule 403 analysis. The reconsideration judge then concluded, without making findings based on the record, that the motion judge's unsupported exclusions were not palpably unreasonable. The reconsideration judge's evidential rulings were unsupported in the record, and therefore error.

It follows that we vacate the reconsideration judge's orders as to S-5, S-6, S-10, S-11, and S-12. On remand, the court must consider both parties'

A-2952-24

arguments and make factually supported and reasoned determinations regarding the admissibility of those exhibits.

ii

Broughton's Exhibits

SB-2 and SB-4

SB-2, the jail call between Broughton and Angel Cruz, was initially excluded by the motion judge. However, the reconsideration judge, in the order of February 6, 2025, denied the State's motion in part without prejudice, finding that the motion judge had reserved decision on SB-2's admissibility for trial. However, the judge also excluded a different portion of SB-2, specifically Page 12, Lines 8-12. The reconsideration judge later admitted a portion of the recorded call in its order of May 16, 2025. We see no need to disturb the reconsideration judge's orders as to SB-2, and we affirm.

Finally, we turn to SB-4. The State sought admission of page 2, lines 7-15 of the SB-4 jail call transcript in which Broughton made certain statements to "Uncle Harold" about his whereabouts on the date of the shooting. The State argued that Broughton's statements provided context to a later portion of the jail call, page 7, lines 6-14, in which Broughton told "Uncle Harold" that

13

investigators were "pressing my girl" for information. Defense counsel objected.

Commenting on page 2, lines 7-15, the motion judge stated:

> THE COURT: It's . . . a statement made by a defendant, so it's admissible. Then the question is; does the prejudicial value outweigh its probative worth. And in this context it gives – it gives context to the other statements which I found were properly admissible.

The motion judge analyzed the lines under Rule 403, and declared, "[w]ell, I think Lines 12 through 15 can be admitted." The unmistakable inference from the judge's decision was that lines 7-11 were excluded. After, defendant objected to lines 14-15 where Broughton said, "[t]hat s[**]t weak man so I'm just tryin [sic] to get these lawyers to work man." The motion judge modified its ruling to exclude this language from lines 12-15.

The motion judge did not make findings on why lines 7-11 were unduly prejudicial, confusing, and misleading, or would cause undue delay, waste time, or represent needless cumulative presentation of evidence. The judge mentioned the Rule 403 standard on the record during the colloquy but did not apply the standard to the statements to reach its decision excluding this portion of SB-4. We conclude that this was a mistaken exercise of the motion judge's discretion, as were the reconsideration judge's orders denying the State's successive

14

motions. It follows that the May 16, 2025 order denying the State's motion for reconsideration of the motion judge's ruling excluding page 2, lines 7-11 is vacated. On remand, the court shall consider the parties' arguments and provide its reasons for admission or exclusion of page 2, lines 7-11 of SB-4.

Affirmed in part, vacated in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Healy

Clerk of the Appellate Division